PEOPLE OF PORTO RICO, EX REL. EUGENIO PADILLA-RÍOS ET AL.,
   Plaintiff and Appellant, *v.* JOAQUÍN OMS-SULSONA ET AL.,
   Defendants and Appellees.

No. 3674. Argued June 24, 1925.—Decided July 10, 1925.

1. QUO WARRANTO—ELECTIONS—FRAUD—CONTEST—CERTIORARI.—When an election
   fraud is committed anywhere on the Island the appropriate remedy is avail-
   able to the person aggrieved, and when it is committed outside of San Juan
   the person aggrieved has the additional remedy of bringing a certiorari pro-
   ceeding in San Juan.
2. ID.—ID.—ID.—ID.—ID.—RETURNS.—The certiorari proceeding prescribed by sec-
   tion 89 of the Elections Act is not limited to an examination of the official
   returns.
3. ID.—ID.—ID.—ID.—ID.—The period of fifteen days prescribed by section 89
   of the Elections Act begins to run from the publication of the result of
   the canvass and not from the date of the election.
4. ID.—ID.—ID.—ID.—ID.—The remedy by certiorari authorized by section 89 of
   the Elections Act is merely cumulative with the remedy by *quo warranto*
   and with other common-law or statutory remedies not incompatible with the
   special statute.
5. ID.—ID.—ID.—ID.—ID.—The right to review an election by *quo warranto* is
   generally lost unless the installation of an incumbent follows hard upon the
   publication of the returns so that the remedy may be invoked within the
   time prescribed by law.
6. ID.—ID.—ID.—ID.—ID.—PLEADING—DE FACTO JUDGE—PRESUMPTION.—In the
   absence of objection in the trial court shown by the record a special judge
   appointed under color of authority is a *de facto* judge, and in the absence
   of proof in the record that there was no occasion for his appointment the
   act of the Governor in appointing him is presumed to be regular.

District Court of Mayagüez, Charles E. Foote, J. Judgment for
   the defendants in a *quo warranto* proceeding. *Affirmed.*
*Benet & Souffront* and *Figueroa del Rosario* for the appellant. *Luis
   Muñoz Morales* and *Angel A. Vázquez* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

The People of Porto Rico, at the instance of Eugenio
Padilla Ríos and others, brought this writ of *quo warranto.*
Frauds were charged inasmuch as in the election at Mari-
cao ballots were deposited in the urn never voted by citi-
zens, results were changed and even imaginary persons ap-
peared in the voting lists. When one examines the peti-
tion it appears that all these abuses were committed vio-
lently and openly, so that it was practically a public matter,

if true, that these election frauds had been committed. The action was begun on the 17th day of February, 1925.

The judge who tried the case dismissed it because he thought, and his holding is assigned as error, that the remedy given by the Elections Law (Acts of 1924, p. 34) was exclusive. It provides:

"That the result of the canvass of an election as declared by the Insular Board of Elections and published by the General Supervisor of Elections shall be final, unless the same shall be contested by a certiorari or other authorized legal proceeding filed within fifteen days from the date of the publication of the result of such canvass, in a court of competent jurisdiction, and a certiorari proceeding in the District Court of San Juan is hereby authorized in such cases."

[1] When a fraud is committed anywhere on the Island the appropriate remedy is available to the person aggrieved. When committed outside of San Juan the aggrieved person has the additional remedy of bringing a certiorari suit in San Juan, where the Insular Board of Elections sits, where the superintendent has his office, and where presumably the ballots are preserved.

[2] The certiorari proceeding referred to, while from the use of the name may have some of the characteristics of a classical writ of certiorari, is not limited to an examination of the official returns. The protests, the affidavits filed before the board, and possibly some evidence *aliunde,* especially if discovered recently, might be revised in a certiorari proceeding. The idea of the Legislature was to supply a writ for the correction of election abuses, and, similarly to the Municipal Law and the Workmen's Compensation Law, the Legislature has given a remedy. To limit it to the official returns would render the writ in some cases completely nugatory.

[3] The next thing to be noticed is that an aggrieved person is not limited to a period of fifteen days from the date of the election. The period begins to run from the

publication of the result of the canvass, always a number of days later than the date of the election. Perhaps we may take judicial notice that in the elections of 1924 the board sat and the result was announced quite a while later.

[4] The parties have cited us to very little of real bearing. The law seems to be pretty well resumed in 20 C. J. 213, Par. 271, Tit. Elections:

"b. Exclusiveness of Remedy. There is some apparent conflict among the cases as to whether, when the statute prescribes a specific mode for contesting elections, that mode is exclusive of or cumulative with the common-law remedy by quo warranto, although this apparent lack of judicial harmony can generally be explained by the difference in the statutes under which the decisions were rendered. There are many cases in which it is said that the statutory remedy is exclusive, and the common-law remedy by quo warranto will not be entertained, except in special cases where it appears that public interests require that the writ shall issue. Notwithstanding the numerous cases apparently supporting the view that the statutory remedy is exclusive, the better opinion seems to be that unless the intention of the law making power to deprive the court of its jurisdiction plainly appears, the special statutory remedy is merely cumulative with the remedy by quo warranto and with other common-law or statutory remedies not incompatible with the special statute. And although it is held that quo warranto is superseded by statutory proceedings for contesting elections, the courts will entertain quo warranto in those instances where the statutory remedy is inapplicable or insufficient. The use of quo warranto to inquire into the validity of an election to public office is not limited by statutory provisions for canvassing ballots and declaring the result of an election. It has been held that where by statute a special remedy is provided in the case of a disputed election the courts will not interfere by injunction even to prevent the perpetration of a fraud, although the duty of the courts under such circumstances to interfere by mandatory injunction to compel the special statutory tribunal having jurisdiction of the contest to act if it neglects or refuses to do so without good cause is recognized; and it has been held that the court will interfere where the legislature was without power to appoint the special tribunal to try the contest. So where an election is void on its face for failure to take the necessary jurisdictional steps, injunction will lie, notwith-

standing the existence of a statutory remedy for contesting elections. But the court will not determine the rights of candidates in mandamus proceedings against the canvassers, or enter into an investigation of the matters in contention by the ordinary forms of legal or equitable proceedings. The general law regulating election contests applies to contests between candidates at an election and not to disputes about the title to an office, where one of the parties claims by appointment of the executive and the other by election of the people.''

[5] In Porto Rico the Legislature itself has said that the remedy shall be exercised in fifteen days from the publication of the result, and that otherwise the publication is final. This limits the right of an aggrieved person if his case does not fall within any of the exceptions enumerated. The right to revise by quo warranto is thus generally cut off unless the installation of an incumbent follows hard upon the publication. An example will explain what we mean. If the publication was delayed until January and the installation took place the next day, then the aggrieved party could present a quo warranto within fourteen days, being fifteen days from the publication.

The time limit appears to be adequate, as we have indicated. The idea of the Legislature was to put an end to contests after a reasonable time given to apply for a remedy. Therefore it is unnecessary to determine the nature of a writ of quo warranto in general. There was no right to such a writ on the 17th of February, 1925, considering our special law. Nor can we even consistently suppose that such a right might still have existed fifteen days after the installation, the latter taking place so long after the publication.

Appellant also assigns as error that the special judge who sat in the case was not duly named and that no emergency existed for his being called. The record does not disclose that this question was raised in the court below, which is a sufficient reason for not finding error.

[6] In the absence of due challenge, the special judge, named under color of authority, was a judge *de facto*. In the cited case of *People* v. *Díaz,* 18 P.R.R. 878, it was shown that the regular judge was there, the challenge was made, and there was no room for a judge *de facto*.

Moreover, we agree with the appellee that the record does not disclose that there was no occasion for naming a special judge. In the absence of proof to the contrary, the action of the Governor in naming a special judge would be presumed to be regularly made. The following presumptions from the Law of Evidence seem applicable. Section 102, Par. 14: That a person acting in a public office was regularly elected or appointed to it; Section 102, Par. 32: That the law has been obeyed.

The judgment should be affirmed.